IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| LOUISE CASE, individually and on behalf of all others similarly situated<br>c/o Spangenberg Shibley & Liber LLP<br>1001 Lakeside Avenue East, Suite 1700<br>Cleveland, OH  44114<br><br>            Plaintiff<br><br>     v.<br><br>ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, an Illinois Corporation<br>c/o CT Corporation System, Statutory Agent<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH  43219<br><br>            Defendant | CASE NO.<br><br>JUDGE<br><br><br><br>**JURY DEMAND ENDORSED HEREON** |

## CLASS ACTION COMPLAINT FOR DAMAGES

Plaintiff Louise Case ("Plaintiff"), on behalf of herself and all others similarly situated, files this Class Action Complaint against Allstate Fire and Casualty Insurance Company ("Allstate" or "Defendant"), and in support thereof states the following:

## NATURE OF THE ACTION

1. This is an Ohio class action lawsuit by Ohio resident Louise Case, who suffered a total loss on an insured vehicle. Plaintiff was insured under Defendant's automobile policy issued for private passenger auto physical ("PPA") policy of insurance. Plaintiff made a covered claim for physical damage. Defendant breached its policy by failing to pay the full sales tax, title transfer fees, and registration fee dues under the policy.

2. Plaintiff files this lawsuit on behalf of all persons insured under an Allstate insurance policy who suffered a total loss covered claim and were not paid the full sales tax, title transfer fees and/or registration fees due under their policy.

3. In the Policy, Defendant's standardized policy language promises, upon the occurrence of a covered loss to an insured vehicle, to pay the cost to repair or replace the vehicle (or to directly repair or replace the vehicle).

4. A "total loss" occurs where the cost to repair or replace the vehicle – the loss Allstate promised to pay – exceeds the pre-loss actual cash value ("ACV") of the insured vehicle (less the post-loss salvage value). In such cases, Defendant's liability is limited to or capped at the pre-loss ACV.

5. Defendant's standardized policy language as to coverage for ACV of total-loss vehicles is present in every auto policy issued by Defendant in Ohio during the relevant time period.

6. Sales tax, title transfer fees, and registration fees are mandatory elements of the cost to repair or replace damage to a vehicle, including for Plaintiff's total loss vehicle. If instead of paying the cost to repair or replace the loss to a vehicle, Defendant's liability is limited to the pre-loss ACV of the insured vehicle, such amount would also include sales tax, title transfer fees, and registration fees. State law imposes a mandatory state sales tax of 5.75% (plus local sales tax of 0–3%), minimum title transfer fees of $15.00, and minimum registration fees of $4.50 on each vehicle purchase or transfer of title and registration. Sales tax is calculated as the applicable percentage of the adjusted vehicle value ("ACV Sales Tax"). As such, the Policy includes sales tax, title transfer fees, and registration fees (which are mandatory costs to purchase a vehicle in Ohio) in the ACV total loss coverage provided by Defendant.

7. Nothing in the Policy conditions payment of sales tax, title transfer fees, and registration fees on whether a vehicle is actually repaired or replaced and is thus incurred by the insured. Nothing in the Policy conditions payment of ACV on whether costs, including sales tax and fees, are incurred by the insured.

8. Defendant's failure to include ACV Sales Tax, title transfer fees, and registration fees in making payment to the Class Members constituted a breach of contract with every putative Class Member.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because (a) Plaintiff is a member of the putative class, which consists of at least 100 members; (b) Plaintiff is an Ohio citizen and Defendant is an Illinois citizen; and (c) the amount-in-controversy exceeds the sum of $5 million exclusive of interest and costs.

10. Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and Defendant is subject to personal jurisdiction here.

## PARTIES

11. Plaintiff Louise Case is and was domiciled in Highland County, Ohio, and was an Ohio citizen at all times relevant to this lawsuit.

12. Allstate is and was, at all times relevant to this lawsuit, a foreign corporation located in, incorporated in, and with its principal place of business in Illinois. Allstate transacts insurance in Ohio.

**FACTUAL ALLEGATIONS**

13. Plaintiff entered the Policy agreement to be insured by Allstate. *See* **Exhibit A**, the form policy, which sets out the Policy terms of coverage for total-loss claims covered by Defendant for Plaintiff and all putative Class Members ("the Policy").

14. The Policy provided physical damage coverage for Plaintiff's 2010 Ford Fusion SE FWD.

15. On or about May 16, 2018, Plaintiff's vehicle sustained loss/damage. Subsequently, Plaintiff filed a claim with Allstate for the physical damage caused by the collision.

16. Allstate determined that the cost to repair or replace the damage to the vehicle exceeded the pre-loss ACV, and thus that the vehicle was a "total loss", and that the claim was a covered claim. Rather than paying the cost to repair or replace the damage, Allstate invoked its ACV limitation on liability for loss thereby allowing Allstate to pay the lesser ACV amount.

17. Allstate, through a third-party vehicle valuation provider, determined the vehicle had a base value of $4,582.00. *See* **Exhibit B** at 1 (Valuation Report).

18. Allstate then made a condition adjustment and subtracted $387.00 from the base value, added $17.00 in refurbishments, and determined that the adjusted vehicle value was $4,212.00. *Id.* ACV Sales Tax (the applicable percentage of the adjusted vehicle value) was calculated to be $305.37, and a DMV fee of $19.50 was added, for a total of $4,536.87, before subtracting the $250.00 deductible. *Id*.

19. Allstate subtracted the deductible of $250.00 **but did not include the ACV Sales Tax of $305.37 reflected in the Valuation Report, or any amounts for title transfer fees or registration fees.** Instead, Allstate took the adjusted vehicle value and subtracted the deductible, for a total payment of $3,962.00. *See* **Exhibit C** (Settlement Breakdown).

20. The ACV Sales Tax was $305.37 because the applicable sales tax was 7.25% (5.75% state sales tax and 1.5% local sales tax) and the adjusted value of the vehicle at the time of the loss was $4,212.00.

21. Allstate paid $3,962.00 on Plaintiff's total-loss claim. But this payment did not include the required $305.37 for sales tax, the minimum title transfer fees of $15.00, or the minimum registration fees of $4.50. By not including ACV Sales Tax, title transfer fees, or registration fees in the claim payment, Allstate breached its contract with Plaintiff.

**A.     The Policy requires Defendant to pay ACV at a Minimum.**

22. The Policy promises to pay for collision and comprehensive loss. Ex. A, Policy at 18 of 22.

23. The Policy provides as follows relating to PPA physical damage collision coverage:

> If a premium is shown on the Policy Declarations for Auto Collision Insurance, **we** will pay for direct and accidental loss to **an insured auto** (including insured loss to an attached trailer) from a collision with another object or by upset of that **auto** or trailer.

*Id.* (emphasis in original).

24. The Policy provides as follows relating to PPA physical damage comprehensive coverage:

> If a premium is shown on the Policy Declarations for Auto Comprehensive Insurance, **we** will pay for direct and accidental loss to an **insured auto** not caused by collision.

*Id.* (emphasis in original).

25. Under "Part 4: Protection Against Loss to the Auto" the Policy provides the following limit of liability for PPA physical damage coverage:

**LIMIT OF LIABILITY**

**Our** limit of liability for loss is the least of:

> 1. the actual cash value of the property or damaged part of the property at the time of the loss, which may include a deduction from depreciation; or
>
> 2. the cost to repair or replace the property or part to its physical condition at the time of loss using parts produced by or for the vehicle's manufacturer, or parts from other sources, including, but not limited to, non-original equipment manufacturers, subject to all applicable state laws and regulation;
>
> * * *
>
> Any applicable deductible is then subtracted.

*Id.* at 21 of 22. (emphasis in original).

26. Defendant explains that the term "total loss" describes the scenario where, in Defendant's judgment, the amount of loss, which is the cost to repair or replace the damage to the insured vehicle, exceeds the vehicle's pre-loss ACV (less its salvage or retained value).

27. Thus, where "direct and accidental damage" to a vehicle occurs, Defendant promises to pay the cost to repair or replace the damage. *Id.* at 18 of 22. Defendant's promise to pay for such damage either directly or by paying the cost in money. *Id.* The cost to repair or replace damage to a vehicle includes sales tax, title transfer fees, and registration fees.

28. Such liability for loss is not limitless, however. While promising to pay to repair or replace the damage to the vehicle, Defendant also caps its liability at the pre-loss ACV of the vehicle. *Id.* Thus, although Defendant promises to pay the cost to repair or replace the loss, if such amount is higher than the pre-loss ACV of the vehicle, Defendant is not obligated to pay the

6

(higher) cost to repair or replace the loss. Instead, the Policy permits Defendant to pay only the (lesser) ACV amount.

29. Because a "total loss" is the term used to describe the situation where the cost to repair or replace the loss (the full amount of potential coverage) exceeds the pre-loss ACV (the limitation on the promise to pay), the Policy further explains that the amount owed in the context of such scenario is the lesser amount, *i.e.*, ACV. *Id.*

30. ACV is not explicitly defined in the Policy.

31. Where Defendant elects to pay in money the cost to repair or replace the damage (or the ACV amount), the Policy contains no language: (1) excluding sales tax or state and/or local regulatory fees; (2) conditioning payment of sales tax or state and/or local regulatory fees (or any other element) for any purpose whatsoever; (3) requiring an insured to obtain a replacement vehicle at all in order to receive payment; or (4) any provision linking the amount of sales tax or state and/or local regulatory fees (or any other element) on the amount (if any) actually spent by the insured on the total-loss vehicle or on any replacement vehicle.

32. The Policy does not condition an insured's receipt of full coverage upon the purchase of a replacement vehicle.

33. The Policy does not condition Defendant's payments of total-loss coverage on an insured's purchase of a replacement vehicle.

34. The Policy provides no notice to an insured that the amount of sales tax coverage provided under the Policy depends on an amount of sales tax actually paid on a replacement vehicle. The Policy does not require insureds to pay sales tax before receiving sales tax coverage related to their vehicle's replacement cost.

35. The Policy does not permit Defendant to determine the *amount* of sales tax coverage after purchase of a replacement vehicle (if any). Instead, the Policy promises ACV sales tax – sales tax based on a comparable vehicle, not some other vehicle an insured may or may not purchase. If an insured purchases a more expensive vehicle, the amount owed is not based on the more expensive vehicle; rather, the amount owed remains the amount it *would* cost to buy a vehicle comparable to the total-loss vehicle. If an insured purchases a less expensive vehicle, the amount owed is not based on the less expensive vehicle; rather, the amount owed remains the amount it *would* cost to buy a vehicle comparable to the total-loss vehicle. If the insured does not purchase a vehicle at all, the amount owed is the same, *i.e.,* the amount it *would* cost to buy a vehicle comparable to the total-loss vehicle.

36. Throughout the Class period, Ohio and its local governments imposed sales taxes applicable to the purchase of any private passenger vehicle. These sales taxes are mandatory and apply to the replacement of all total-loss vehicles in Ohio. Ohio Rev. Stat. § 5739.02(A). None of the exceptions in Ohio Rev. Stat. § 5739.02(B) apply to the sale or lease of private passenger motor vehicles.

37. Throughout the Class period, Ohio prohibited buying or selling motor vehicles unless the certificate of title under the name of the buyer was provided. Ohio Rev. Stat. § 4503.03. Ohio also prescribes the method and form for applying for transfer of certificate of title into the name of the buyer. Ohio Rev. Stat. § 4503.06. Finally, Ohio imposes a flat (minimum) fee on certificate of title transfers. Ohio Rev. Stat. § 4503.09. These title transfer fees are mandatory and apply to the replacement of all total-loss vehicles in Ohio. At the time of Plaintiff's loss, the title transfer fee was $15.00. *Id.*

38. Throughout the Class period, Ohio required that every vehicle be legally and properly registered to be used or operated on Ohio highways and roadways. Ohio Rev. Stat. § 4503.10. Ohio provides the authority to set the fee amount for transfer of registration to the state registrar. Ohio Rev. Stat. § 4503.038. These registration fees are mandatory and apply to the replacement of all total-loss vehicles in Ohio. The registration transfer fee at the time of loss on Plaintiff's vehicle was $4.50.

39. Plaintiff does not contest or challenge that Defendant correctly calculated the amount of loss – the cost to repair or replace the damage to the Plaintiff's vehicles – nor that such amount exceeded the pre-loss ACV and thus constituted total losses. Nor does Plaintiff contest the adjusted vehicle value amounts. Instead, Plaintiff alleges only that the Policy includes coverage for sales tax (calculated as the applicable percentage of the adjusted vehicle value) and title transfer and registration fees in the event of a total-loss claim without precondition.

40. Plaintiff paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident.

## CLASS ALLEGATIONS

41. Plaintiff brings this action seeking representation of a Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

42. Plaintiff asserts claims for breach of contract on behalf of the Class defined as follows:

> All insureds, under any Ohio policy issued by Allstate Fire and Casualty Insurance Company covering a vehicle with private-passenger automobile physical damage coverage for comprehensive or collision loss who submitted a first-party physical damage claim determined to be a covered total loss within the relevant statutory time period prior to the date on which the Complaint was filed until the date of any certification order, where Defendant did not include sales tax, title-transfer fees and/or registration fees in making

9

    payment for the claim or included an amount in sales tax less than ACV Sales Tax (the applicable percentage of the adjusted vehicle value).

43. Plaintiff seeks to represent the Class.

44. Excluded from the Classes are all officers and employees of Defendant and its affiliates, parents, and subsidiaries; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

45. Every member of the putative Class submitted covered claims where Defendant determined that the cost to repair or replace the vehicle exceeded the pre-loss ACV (less salvage value) of the vehicle, and thus that the vehicle was a "total loss."

46. The members of the Class are ascertainable and readily identifiable from information and records in Defendant's custody, possession, or control.

47. **Numerosity:** Although the precise number of Class Members is unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff believes that because Defendant is one of the largest motor vehicle insurers in the State of Ohio and writes hundreds of millions of dollars of private passenger physical damage coverage premiums, the classes of persons affected by Defendant's unlawful practice consists of thousands of individuals or the class of persons affected are otherwise so numerous that joinder of all Class Members is impractical. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendant pursuant to standardized insurance policy language, and results in the retention by Defendant of insurance benefits and monies properly owed to Plaintiff and the Class Members. Thus, numerosity as to both classes is established.

48. **Commonality:** Plaintiff's claims raise questions of law and fact common to all members of the Class, within the meaning of Rule 23(a)(2), including (a) whether, under the Defendant's standardized policy language, Plaintiff and the Class Members are owed ACV Sales Tax, title transfer fees and/or registration fees upon the total loss of an insured vehicle without precondition; and (b) whether Defendant breached its insurance contracts with the Plaintiff and the Class Members by conditioning payment of sales tax, title transfer fees and/or registration fees to members of Class who suffered a total loss to the insured vehicle on actual replacement of the vehicle, and conditioning the amount of sales tax on the amount incurred by the insured.

49. **Typicality:** Plaintiff's claims are typical of the claims of all other members of the Class within the meaning of Rule 23(a)(3) because all such claims arise from the allegedly improper failure by Defendant to include ACV Sales Tax, title transfer fees and/or registration fees in making payment upon the total loss of insured vehicles. The material and relevant policy terms for each Class Member are substantially identical to the terms of Plaintiff's policy. Plaintiff's claims are based on the same legal theories as those of the Class and is subject to the same defenses, meritorious or not.

50. **Adequacy:** Plaintiff and Plaintiff's counsel will fairly and adequately protect and represent the interests of each member of the Class within the meaning of Rule 23(a)(4). Plaintiff is committed to the vigorous prosecution of this action and retained competent counsel experienced in prosecuting and defending class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include sales tax after total losses.

51. **Predominance:** Pursuant to Rule 23(b)(3), the previously articulated common issues of fact and law predominate over any question solely affecting individual members of the

Class. Any differences in damages as to Class Members is a function of the underlying vehicle value, but the measure of damages is the same, the calculation of which is a ministerial function. Moreover, there are no individual issues as to liability precluding a finding of predominance, as the claims are premised on substantively identical Policy language and uniform business practices.

52. **Superiority:** Class treatment is superior to any other available methods for a fair and efficient adjudication of the controversy within the meaning of Rule 23(b)(3) because, among other reasons, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

## COUNT I: Breach of Contract

53. The allegations in Paragraphs 1 through 52 are hereby incorporated by reference.

54. Plaintiff and the Class Members were insured under contracts with Defendant and performed all requirements under it. Ohio law governs the policies at issue as to each and every member of the Class, including Plaintiff.

55. Plaintiff and every member of the Class made a claim under their policy that Defendant determined to be a first party total loss covered claim.

56. Pursuant to the terms of the Policy, Defendant was obligated to pay Plaintiff and the Class Members sales tax calculated as the applicable percentage of the vehicles' adjusted vehicle value, title transfer fees and/or registration fees without precondition.

57. Defendant failed to pay full ACV Sales Tax, title transfer fees and/or registration fees to Plaintiff and each and every member of the Class.

58. The aforementioned failure constituted a breach of the material terms of the contracts.

59. As a result thereof, Plaintiff and the Class suffered damages and are entitled, under the Policy, to sums representing ACV Sales Tax (less any amount in sales tax already paid), title transfer fees and/or registration fees prejudgment and postjudgment interest, attorneys' fees, and all costs and expenses of litigation.

60. Plaintiff and Class Members are entitled to an award of attorneys' fees and costs under Ohio law and all contractual and statutory provisions allowing for recovery of attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the Class, demands a trial by jury on all triable issues and seek judgment as follows:

    a) An Order (1) certifying this action as a class action on behalf of the Class; (2) appointing Plaintiff as Class Representative of the Class; and (3) appointing the undersigned as Class Counsel;

    b) For an award of compensatory damages in amounts owed under the Policy;

    c) For all other damages according to proof;

    d) For an award of attorneys' fees and expenses as appropriate;

    e) For costs of suit incurred herein;

    f) For pre- and post-judgment interests on any amounts awarded; and

    g) For other and further forms of relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: October 21, 2020

Respectfully submitted,

/s/ Stuart E. Scott
STUART E. SCOTT (0064834)
KEVIN C. HULICK (0093921)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (FAX)
*sscott@spanglaw.com*
*khulick@spanglaw.com*
SCOTT EDELSBERG *(pro hac vice to be filed)*
**EDELSBERG LAW, PA**
20900 NE 30th Avenue, Suite 417
Aventura, FL  33180
(305) 975-3320
*scott@edelsberglaw.com*

ANDREW J. SHAMIS *(pro hac vice to be filed)*
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 705
Miami, FL  33132
(305) 479-2299
(786) 623-0915 (FAX)
*efilings@shamisgentile.com*

RACHEL DAPEER *(pro hac vice to be filed)*
**DAPEER LAW, P.A.**
300 South Biscayne Boulevard, Suite 2704
Miami, FL  33131
(305) 610-5223
*rachel@dapeer.com*

***Counsel for Plaintiff and the Proposed Class***